IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ESTATE OF MATTHEW KRUPAR, by and through administrator, JOE KRUPAR, | ) ) ) ) | No. 3:21-CV-137 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PATRICK BRADSHAW and THE CITY OF LEAGUE CITY, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## **AMENDED COMPLAINT**

Plaintiff, ESTATE OF MATTHEW KRUPAR, by and through administrator JOE KRUPAR, complains of Defendants PATRICK BRADSHAW, and the CITY OF LEAGUE CITY, as follows:

### **Introduction**

1. League City Police Department Officer Patrick Bradshaw shot and killed Matthew Krupar without any lawful justification.

2. When he was killed, Matthew Krupar posed no threat of significant bodily harm to anyone, including the man that killed him, Defendant Bradshaw.

3.      Rather, Matthew Krupar was suffering from a mental health issue that did not deserve the implementation of a death sentence by an armed government officer.

4.      Because of his status as a police officer, Defendant Bradshaw has not been held accountable for his actions. No criminal charges were ever filed, and he has not even been removed from the League City police force.

5.      Tragically, the shooting of an unarmed citizen by a member of the League City Police Department was not an isolated incident. League City police killed four citizens (including a high school student) in less than two years before Matt Krupar was killed—a number that is totally disproportionate and unreasonable given the size of the department and the League City population.  The frequency that League City police use deadly excessive force demonstrates improper training and/or supervision of officers that encourages them to unreasonably use deadly force.

6.      In addition, League City police have engaged in excessive force on other occasions that did not result in death.

7.      Like Defendant Bradshaw, League City has not been held accountable for its actions (and inactions) concerning the use of excessive force by officers it employs at the League City Police Department.

8.      This action, brought under 42 U.S.C. § 1983, seeks justice—and accountability—for the wrongful, unjustified killing of Matthew Krupar and

seeks to deter the wrongful, unjustified shootings of others at the hands of the League City police.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331.

10. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein all occurred within this district, and, upon information and belief, all or most of the parties reside in Galveston County.

## PARTIES

11. The Estate of Matthew Krupar represents the property and legal interests of decedent Matthew Krupar. Matthew Krupar, who died as a result of being shot by Defendant Bradshaw, was a loving son to his two parents, a devoted brother to his sister, and caring uncle to his two nieces.

12. Joe Krupar, the father of Matthew Krupar, is the court-appointed administrator of the Estate of Matthew Krupar. The Estate also includes any legal interests arising out of Matthew Krupar's death that Joe Krupar or any heir of Matthew Krupar may have. The Estate brings those claims on their behalves.

13. Defendant Patrick Bradshaw is a League City Police Department officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a League City Police Department officer.

14. Defendant City of League City is a Texas municipal corporation that operates the League City Police Department (the "LEAGUE CITY POLICE DEPARTMENT" or "Department"), which in turn sets city-wide policy for police officers employed by the Department.

## FACTUAL ALLEGATIONS

### Defendant Bradshaw Shoots Matthew Krupar

15. On December 11, 2019, Defendant Bradshaw was a full-time patrol officer for the League City Police Department.

16. That day, Defendant Bradshaw was working as a patrol officer who responded to a call on Turner Fields Lane, which is where Matthew Krupar lived.

17. Defendant Bradshaw was wearing his Department-issued uniform, wearing a LEAGUE CITY POLICE DEPARTMENT badge or insignia, armed with his service weapon, and acting in a full capacity as a LEAGUE CITY POLICE DEPARTMENT officer.

18. Defendant Bradshaw knowingly operated a police car that could not audio or video record his actions. This violated the League City Police Department's policy.

19. Matthew Krupar was home on December 11, 2019, and was completely unarmed.

20. Matthew Krupar was not a physically large person.

21. Matthew Krupar was wearing only underwear and a t-shirt.

4

22. Matthew Krupar was not armed with any weapon, nor did he ever try to obtain any weapon before Defendant Bradshaw killed him. His lack of possessing weapons was obvious given that he had no capacity to conceal any weapon.

23. Matthew Krupar committed no crime that day. His only issue was related to his mental health.

24. When Defendant Bradshaw arrived, he escalated that mental health issue.

25. Matthew Krupar came outside of his house, unarmed and unable to harm anyone, especially trained police officers.

26. Within minutes of Defendant Bradshaw's arrival, Matthew Krupar was dead from numerous bullets fired by Defendant Bradshaw's service handgun.

27. When Defendant Bradshaw shot Matthew Krupar, Mr. Krupar was clearly and obviously unarmed (he had no weapons in his hand and had no way to conceal any weapons), had not tried to disarm Defendant Bradshaw or otherwise become armed, and did not pose a risk of substantial bodily harm (or any bodily harm) to any other person at the scene.

28. Defendant Bradshaw was aware that Matthew Krupar was suffering from a mental health crisis.

29. Despite Matthew Krupar posing no serious harm to anyone and being totally unarmed, Defendant Bradshaw shot Mr. Krupar four separate times.

30. Immediately before Defendant Bradshaw shot Mr. Krupar, Mr. Krupar was not close enough to strike or otherwise attempt to disarm Defendant Bradshaw (which Mr. Krupar did not try to do at all). In fact, when he was shot, Matthew Krupar was standing with his hands out to his side, without concealment, and at the edge of the street in front of his house in broad daylight.

31. Mr. Krupar did not have the capacity to cause any serious bodily harm to anyone in the moment that he was fatally shot four times.

32. Defendant Bradshaw used unreasonable deadly force in shooting Matthew Krupar four times.

33. Defendant Bradshaw failed to provide any medical care to Matthew Krupar, who lay dying from the four bullet wounds. Despite the obvious seriousness of the wounds, Defendant Bradshaw took no action himself to provide any care for those wounds. Rather, the first time that anyone provided care was when EMS personnel arrived, more than three minutes later.

34. Defendant Bradshaw's failure to provide medical care violated his training and League City Police Department policy. There was nothing

stopping Bradshaw from providing care. This was not a crime scene—outside of the shooting of Matthew Krupar, no crime had occurred—and nothing in the vicinity of the shooting posed any security risk preventing Bradshaw from personally providing care to seriously wounded Matthew Krupar.

**Defendant Bradshaw Attempts to "Cover-Up" His Unlawful Shooting**

35. Defendant Bradshaw's efforts to shield his conduct while on duty the day that he fatally shot Matthew Krupar began when he chose to ignore League City Police Department policy and intentionally operate a police car whose audio-video system was inoperable. This meant that Defendant Bradshaw's misconduct would not be recorded in any manner. Despite knowingly violating League City Police Department policy regarding audio visual recording devices, the City of League City did not discipline Defendant Bradshaw.

36. After the shooting, Defendant Bradshaw told authorities and investigators that he shot Matthew Krupar because he subjectively believed that he was "in a life and death struggle."

37. That purported subjective belief was a falsehood.

38. And there was nothing happening at the scene that supports this falsehood.

39. Rather, Matthew Krupar's actions demonstrate that he was not a risk of substantial bodily harm to anyone.

7

40. Defendant Bradshaw's accounting of events is extremely implausible, includes falsehoods, and is belied by the external evidence.

## The City of League City Failed to Discipline Defendant Bradshaw

41. Despite Defendant Bradshaw's implausible version of events that there was a "life and death struggle," his employer—the City of League City failed to discipline Defendant Bradshaw for the use of unlawful force.

42. In fact, it determined that the fatal shooting was a "justifiable homicide" even before completing an investigation.

43. Instead, desperate to justify the shooting, officers from the League City Police Department searched in vain for anything that might have made the shooting appear justified. But because the shooting was in no way justified, no such evidence was found.

44. The use of League City Police officers to seek a post-hoc justification for the unjustified shooting was consistent with League City's policy and practices that allowed and encouraged its officer to engage in excessive force against community members.

45. Following the shooting (though after a short stint on non-disciplinary administrative leave) Defendant Bradshaw returned to full duty for the Department. Defendant Bradshaw was not, and has not been, disciplined for killing Matthew Krupar.

## League City's Policy and Practices Were the Moving Force behind the Constitutional Violations Inflicted Against Matthew Krupar

46. The shooting of Matthew Krupar was not an isolated incident for the League City Police Department.

47. In fact, since 2018 until Matthew Krupar was killed, League City police officers shot and killed four citizens—a number disproportionate to the populations of League City, TX and the size of the police department. From 2013-20, League City Police Department officers shot more people per resident than 92% of other Texas police departments. Also, from 2013-20, the City of League City had more police shootings per arrest than 76% of Texas law enforcement agencies for similar sized municipalities.

48. As was the case regarding Matthew Krupar, most of those fatal shootings were of unarmed citizens, which demonstrates that League City is failing to adequately train and/or supervise its officers about the use of deadly force.

49. In fact, not one of these officers was disciplined for shooting and killing unarmed citizens or for otherwise using excessive deadly force. That is consistent with the League City Police Department's woeful supervision of the use of force. From 2013-20, the League City Police Department upheld 0% of excessive force complaints, which puts it at the zero percentile of law enforcement agencies from similarly sized communities in Texas.

50. The above statistics relate only to complaints that are actually made. The League City Police Department places barriers to the filing of citizen complaints. For instance, it requires that complaints be notarized and under oath, requirements that are not part of the Texas statute on police complaints. These requirements create a chilling effect on citizens who may wish to make complaints of police misconduct.

51. League City police officers used excessive deadly force in other occasions that did not result in the death of the victim, but Defendant League City failed to hold officers accountable.

52. League City police officers also used excessive force in other cases, but Defendant League City failed to hold officers accountable.

53. The City's failure to discipline Defendant Bradshaw was not the first time the City of League City failed to discipline an officer who used unlawful force. In fact, the League City Police Department has failed to discipline any officer based on a citizen's complaint of unlawful use of force.

54. The Department's failure to train and discipline officers regarding the proper use of force causes, and/or encourages the use of unconstitutional deadly force by League City Police officers.

55. More specifically, the League City Police Department failed to supervise Defendant Bradshaw even though it was aware that he showed "little patience or empathy when dealing with others."

56. This lack of empathy caused Defendant Bradshaw to escalate his interaction with Matthew Krupar, which ended with Defendant Bradshaw's unlawful use of deadly force against Matthew Krupar.

57. The Department's record concerning its failure to train and discipline officers regarding the use of deadly force specifically, and the use of force generally, illustrates the City's deliberate indifference to the rights of individuals, particularly including the rights of citizens who, like Matthew Krupar, were completely unarmed when they were shot.

58. In fact, and as further evidence of both the Department's policies and the City's deliberate indifference, since the shooting of Matthew Krupar, other unarmed men have been shot by LEAGUE CITY POLICE DEPARTMENT officers in a fashion similar to Matthew Krupar, and none have been disciplined.

**Plaintiff's Damages**

59. The Defendants' actions imposed substantial harm on Matthew Krupar during the period of time after which he was shot by Defendant Bradshaw until Matthew Krupar ultimately passed away. The amount of excruciating pain Matthew Krupar felt during those final moments is unquantifiable.

60. In addition, Matthew Krupar, a son, brother, and uncle, lost the opportunity to live the rest of his life. Matthew Krupar lost the opportunity to

earn a living; and the ability to build a life, have children, and enjoy all of the joys of life. These damages are tragic and substantial.

61. Joe Krupar, Matthew's father, has experienced monumental loss as well. Joe Krupar was close with his son and will never again have this relationship nor the opportunity to see Matthew grow. In addition, Joe has been further harmed by the actions subsequent to the shooting by the failure of any authorities to bring any accountability to Defendant Bradshaw.

## Count I - 42 U.S.C. § 1983
## Excessive Deadly Force

62. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

63. As described in the preceding paragraphs, Defendant Bradshaw's actions toward Matthew Krupar violated Krupar's constitutional rights, including but not limited to those under the Fourth and/or Fourteenth Amendments of the United States Constitution.

64. The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience."

## Count II – 42 U.S.C. § 1983
## Unlawful Seizure/Detention

65. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

66. In the manner described in this Complaint, Defendant Bradshaw violated Plaintiff's constitutional rights, causing him damage by detaining him with the absence of probable cause or reasonable suspicion in violation of the Fourth Amendment of the United States Constitution.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Matthew Krupar's constitutional rights.

## Count III—42 U.S.C. § 1983
## Failure to Provide Medical Care

68. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

69. As described in the preceding paragraphs, Defendant Bradshaw's actions toward Matthew Krupar violated Krupar's constitutional rights, including but not limited to the Fourth and/or Fourteenth Amendments of the United States Constitution due to his failure to render any medical care to Matthew Krupar after having detained him by shooting him.

70. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Matthew Krupar's constitutional rights.

## Count IV—42 U.S.C. § 1983
## Wrongful Death

71. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

72. As described in the preceding paragraphs, Defendant Bradshaw's actions toward Matthew Krupar violated Krupar's constitutional rights and wrongfully caused the death of Matthew Krupar, and without those actions, the death of Matthew Krupar would not have occurred.

73. Prior to his death, Matthew Krupar suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot but before he died from the gunshot wounds Defendant Bradshaw inflicted upon him. Joe Krupar suffered from pecuniary loss as a result of the wrongful death of Matthew Krupar.

74. Joe Krupar, Matthew Krupar's father, and Pam Boucher, Matthew Krupar's mother, suffered loss of companionship and mental anguish as a result of the wrongful death of Matthew Krupar.

75. Plaintiff, the estate of Matthew Krupar, which includes Joe Krupar, Pam Boucher, and any heirs of Matthew Krupar, has standing to assert this Count pursuant to Tex. Civ. Prac. & Rem. Code § 71.004(a).

### Count V—42 U.S.C. § 1983
### Survival Action

76. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

77. As described in the preceding paragraphs, Defendant Bradshaw's actions toward Matthew Krupar violated Krupar's constitutional rights and wrongfully caused the death of Matthew Krupar.

78. Prior to his death, Matthew Krupar suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot and before he died.

79. Plaintiff, the Estate of Matthew Krupar has standing to assert this Count pursuant to Tex. Civ. Prac. & Rem. Code § 71.021.

### Count VI—42 U.S.C. § 1983
### Municipal Liability: *Monell*

80. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

81. As described in the preceding paragraphs, the misconduct described in Counts I-III was undertaken under the policy and practice of the

City of League City, such that Defendant City of League City is also liable, in that:

    a.    As a matter of both policy and practice, the City of League City encourages, and is thereby the moving force behind, the very type of misconduct at issue in Counts I-III by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

    b.    As a matter of both policy and practice, the City of League City facilitates the very type of misconduct at issue in Counts I-III by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading League City police officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, the City of League City directly encouraging future uses of excessive deadly force, unlawful detention, and failures to intervene, such as those Plaintiff complains of;

    c.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the League City Police Department violate the constitutional rights of individuals in a manner similar to that alleged by Matthew Krupar in Counts I-III on a regular basis, yet the League City Police Department investigates officer misconduct and

makes findings of wrongdoing in a disproportionately small number of cases.

82. As a result of the City of League City's policies and practices, and the unjustified and unreasonable conduct of the Defendant Bradshaw, Plaintiff has suffered injuries, including severe emotional distress and ultimately death.

### Count VII—Local Law Claim
### Indemnification

83. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

84. The City of League City must pay any tort judgment for damages rendered against Defendant Bradshaw in his capacity as a League City Police Department officer. *League City Code of Ordinances*, Sec. 2-304.

85. During all times relevant to this complaint, Defendant Bradshaw was an employee of the League City Police Department, who acted within the scope of his employment with the City of League City.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants PATRICK BRADSHAW and CITY OF LEAGUE CITY; award compensatory damages and attorneys' fees; award punitive damages against PATRICK BRADSHAW; and provide any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Dax F. Garza
*One of Plaintiffs' Attorneys*

Dax F. Garza
Attorney-In-Charge
S.D. Tex. Bar No. 29404
Texas Bar No. 24030514
Zane P. Aubert
S.D. Tex. Bar No. 3597995
Texas Bar No. 24109600
Dax F. Garza, P.C.
One City Centre
1021 Main Street, Suite 1400
Houston, TX 77002
Ph. 713-522-3000
Fax 713-522-3001
dax@daxgarzalaw.com
zane@daxgarzalaw.com